# In the United States Court of Federal Claims

No. 21-1861C
Filed Under Seal:  April 11, 2022
Unsealed with Redactions and Refiled:  April 18, 2022

```
*************************************
                                    *
SUPPLYCORE INC.,                    *
                                    *
                Plaintiff,          *
                                    *
        v.                          *
                                    *
THE UNITED STATES,                  *
                                    *
                Defendant.          *
                                    *
        and                         *
                                    *
NOBLE SALES CO., INC., d/b/a        *
NOBLE SUPPLY AND LOGISTICS,         *
                                    *
        and                         *
                                    *
PAE-IMK INTERNATIONAL, LLC,         *
                                    *
                Defendant-Intervenors. *
                                    *
*************************************
```

**OPINION AND ORDER**

On May 13, 2021, the Defense Logistics Agency ("DLA") awarded two contracts under one Request for Proposals ("RFP"): a "Zone 1" contract was awarded to Noble Supply and Logistics ("Noble"), and a "Zone 2" contract was awarded to PAE-IMK International, LLC ("PAE").  On September 15, 2021, Plaintiff SupplyCore, Inc. ("SupplyCore") filed a post-award bid protest, challenging both awards.  *See* ECF No. 29.

On December 28, 2021, this Court issued an Opinion and Order partially Granting and partially Denying SupplyCore's bid protest.  ECF No. 37.  The Court granted SupplyCore's Motion with respect to Zone 2, enjoined DLA from continuing performance of the awarded contract, and directed DLA to cancel the award to PAE.  *Id.*  The Court denied SupplyCore's Motion with respect to the Zone 1 contract awarded to Noble.  *Id.*

1

On January 24, 2022, the Government filed a Rule 59(a) Motion for Reconsideration with respect to the Court's Zone 2 holding. ECF No. 41. On February 22, 2022, this Court issued an Order finding that errors had been made in the Court's December 28 Opinion and Order. ECF No. 46. The Court's Order also set a hearing because issues at the heart of the case – DLA's Round 3 finding of "unbalanced" pricing and warning message about pricing that "**cannot be determined fair and reasonable**" (original emphasis) – remained ambiguous in spite of the Administrative Record ("AR").[1] These issues also were not adequately addressed by the Government's briefs.[2] *Id.*

On March 1, 2022, the Government filed a second Motion for Reconsideration responding to the Court's February 22 Order, arguing (A) that the Court should not supplement the AR with a hearing and (B) that SupplyCore bears the burden of proof in the case. ECF No. 47. On March 3, 2022, the Court issued an Order Granting in part and denying in part the Government's second Motion for Reconsideration. The Court denied the Government's argument that the Court may not supplement the Administrative Record and granted the Government's argument that SupplyCore carries the burden of proof. ECF No. 52.

The Court conducted the hearing on March 9. *See* ECF No. 55. For the reasons already noted in the Court's February 22 Order, the Court regarded the Government's Motion for Reconsideration (ECF No. 41) as plausible, so as to effectively restore this Court's review of the case to the arbitrary and capricious standard of review for bid protests.

The Court's holdings in this Opinion and Order are: (1) DLA's finding that PAE distribution line items were "unbalanced" and "**cannot be determined fair and reasonable**" was arbitrary because even though relevant PAE line item pricing was nearly identical or literally identical in previous rounds, DLA made no such finding until Round 3; (2) DLA's Round 3 "**cannot be determined fair and reasonable**" warning to PAE was arbitrary and unequal (prejudicial) to SupplyCore because the Government has presented this assessment, at least in part, in relation to the magnitude by which certain distribution line items exceeded the Government's maximum estimate, and DLA warned PAE about its Drop Ship Tier X price, which was XXXXXXXXX higher than the Government's estimate, but did not equally implicate SupplyCore's price for XXXXXXXXXXX Non-Drop Ship Tier X, which was XXXXX higher than the Government's estimate.

On this basis, the Court **UPHOLDS** its December 28, 2021, decision and **DENIES** Defendant's January 24, 2022, Motion for Reconsideration.

---

[1] *See Academic Facilities Management,* 87 Fed. Cl. 441 (2009) (citing *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380-81 (Fed Cir. 2009)), *infra* note 8.

[2] "The Court notes that the Government's only detailed account of how DLA determined that PAE's pricing was unbalanced is found in a footnote in its Reply. Furthermore, it is only in the Government's Motion for Reconsideration that it explains in detail PAE's response to the notice." ECF No. 46 (citations removed).

I.     **Standard of Review**

   A.  **Standard for Motion for Motion for Reconsideration**

A Rule 59(a) Motion for Reconsideration "must be supported 'by a showing of extraordinary circumstances which justify relief.'" *Biery v. United States*, 818 F.3d 704, 711 (Fed. Cir. 2016) (quoting *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (*quoting Fru-Con Constr. Corp. v. United States*, 44 Fed. Cl. 298, 300 (1999), *aff'd*, 250 F.3d 762 (Fed. Cir. 2000)).  Specifically, the Federal Circuit has identified "three primary grounds that justify reconsideration," "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC,* 597 F.3d 1374, 1383 (Fed. Cir. 2010).

A Motion for Reconsideration based on clear error or manifest injustice "is appropriate where the Court has patently misunderstood a party, or has made a decision outside of the adversarial issues presented to the Court by the parties, or has made an error not of reasoning, but of apprehension." *Del. Valley*, 597 F.3d at 1383 (internal citation and quotation marks omitted).  If the Court determines reconsideration is appropriate, the Court may revise its findings and alter or amend the judgment.  RCFC 59(a), (e).

   B.  **Bid Protest Standard of Review**

In a bid protest, the trial court "review[s] the agency's decision pursuant to the standards set forth in section 706 of Title 5," the Administrative Procedure Act ("APA").  28 U.S.C. § 1491(b)(4); *see Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1350 (Fed. Cir. 2004).  An APA challenge requires showing that the agency action in question is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 n.5 (Fed. Cir. 2001).  Accordingly, "[a] bid award may be set aside" if (1) "the procurement official's decision lacked a rational basis" or (2) "the procurement procedure involved a violation of regulation or procedure." *WellPoint Mil. Care Corp. v. United States*, 953 F.3d 1373, 1377 (Fed. Cir. 2020) (quoting *Impresa*, 238 F.3d at 1332).  The APA also requires that "due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706.  So, "[t]o prevail in a bid protest, a protestor must show a significant, prejudicial error in the procurement process." *WellPoint*, 953 F.3d at 1377 (quoting *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999)); *see also Bannum v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005).

In reviewing the agency's procurement decisions, the Court does not substitute its judgment for that of the agency.  *Redland Genstar, Inc. v. United States*, 39 Fed. Cl. 220 (1997); *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997); *see also M.W. Kellogg Co. v. United States*, 10 Cl. Ct. 17, 23 (1986) (holding that "deference must be afforded to an agency's . . . procurement decisions if they have a rational basis and do not violate applicable law or regulations.").  The disappointed bidder "bears a heavy burden," and the contracting officer is

"entitled to exercise discretion upon a broad range of issues confronting [her]." *Impresa Construzioni Geom. Domenico Garufi*, 238 F.3d at 1332 (citations and quotes omitted). This burden "is not met by reliance on [the] pleadings alone, or by conclusory allegations and generalities." *Bromley Contracting Co. v. United States*, 15 Cl. Ct. 100, 105 (1988); *see also Campbell v. United States*, 2 Cl. Ct. 247, 249 (1983). A procurement decision is rational if "the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." *Impresa*, 238 F.3d at 1333. But "that explanation need not be extensive." *Bannum, Inc. v. United States*, 91 Fed. Cl. 160, 172 (2009) (*citing Camp v. Pitts*, 411 U.S. 138, 142-43 (1973)).

      The Court's "highly deferential" review such that "the disappointed offeror bears a 'heavy burden' of showing that the award decision 'had no rational basis' is particularly the case with respect to matters requiring technical judgment. *See, e.g., Benchmade Knife Co., Inc. v. United States*, 79 Fed. Cl. 731, 740 (2007) ("Agencies are entitled to considerable discretion and deference in matters requiring exercise of technical judgment."); *Beta Analytics Int'l, Inc. v. United States*, 67 Fed. Cl. 384, 395 (2005) ("the minutiae of the procurement process . . . involve discretionary determinations of procurement officials that a court will not second guess.") (quoting *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996)). The protester's mere disagreement with the agency's assessment is not "nearly enough" to demonstrate arbitrary and capricious agency action. *See CRAssociates, Inc. v. United States*, 102 Fed. Cl. 698, 717-18 (2012).

## II.    The Agency's Evaluation of the Zone 2 Contract

### A. The Pattern of PAE's Distribution Line Item Pricing XXXXXXXXXXXXX

      The pattern of PAE's Distribution line item pricing was distinct from the line item pricing of other bidders. This is illustrated, for example, by the Government's first price analysis comparing the various bidders' distribution fees (AR 2849-50):

ROUND 1 DROP SHIP DISTRIBUTION PRICING

| Tier | Price of Item to be Shipped | # of Items (Drop Ship) | Noble Price | **PAE Price** | XXXX Price | SC Price | XXX Price | Gov't Rec. Max Price |
|---|---|---|---|---|---|---|---|---|
| 1 | Less than $10.00 | 685 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 2 | $10.00-$24.99 | 704 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 3 | $25.00-$49.99 | 662 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 4 | $50.00-$99.99 | 1037 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 5 | $100-$249.99 | 2382 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 6 | $250.00-$499.99 | 2094 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 7 | $500.00-$749.99 | 962 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 8 | $750.00-$999.99 | 802 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 9 | $1000.00-$2499.99 | 2503 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 10 | $2500.00-$4999.99 | 1134 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 11 | $5000.00-$7499.99 | 662 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 12 | $7500.00-$9999.99 | 390 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 13 | $10,000.00-$24,999.99 | 611 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 14 | $25,000.00-$49,999.99 | 143 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 15 | $50,000.00-$74,999.99 | 137 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 16 | $75,000.00-$99,999.99 | 85 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 17 | $100,000.00-$249,999.99 | 244 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 18 | $250,000.00-$499,999.99 | 23 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 19 | $500,000.00-$999,999.99 | 6 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 20 | $1,000,000.00-$1,999,999.99 | 3 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 21 | $2,000,000.00-$2,999,999.99 | 2 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 22 | $3,000,000+ | 0 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |

ROUND 1 NON-DROP SHIP DISTRIBUTION PRICING

| Tier | Price of Item to be Shipped | # of Items (Drop Ship) | Noble Price | **PAE Price** | XXXX Price | SC Price | XXXX Price | Gov't Rec. Max Price |
|---|---|---|---|---|---|---|---|---|
| 1 | Less than $10.00 | 171 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 2 | $10.00-$24.99 | 176 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 3 | $25.00-$49.99 | 165 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 4 | $50.00-$99.99 | 259 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 5 | $100-$249.99 | 596 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 6 | $250.00-$499.99 | 524 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 7 | $500.00-$749.99 | 240 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 8 | $750.00-$999.99 | 200 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 9 | $1000.00-$2499.99 | 626 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 10 | $2500.00-$4999.99 | 283 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |

| 11 | $5000.00-$7499.99 | 165 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
|---|---|---|---|---|---|---|---|---|
| 12 | $7500.00-$9999.99 | 97 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 13 | $10,000.00-$24,999.99 | 153 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 14 | $25,000.00-$49,999.99 | 36 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 15 | $50,000.00-$74,999.99 | 34 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 16 | $75,000.00-$99,999.99 | 21 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 17 | $100,000.00-$249,999.99 | 61 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 18 | $250,000.00-$499,999.99 | 6 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 19 | $500,000.00-$999,999.99 | 2 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 20 | $1,000,000.00-$1,999,999.99 | 1 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 21 | $2,000,000.00-$2,999,999.99 | 0 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |
| 22 | $3,000,000+ | 0 | XXXX | XXXX | XXXX | XXXX | XXXX | XXXX |

AR 2849-50 (emphasis added).

In the March 9 hearing, DLA Contracting Officer Matheu Wilson repeatedly distinguished PAE's distribution line item pricing from that of other bidders XXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXX.[3]  Indeed, as evident from DLA's Round 1 price analysis (above), PAE's pricing was instead structured with a recognizable pattern XXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXX.  Mr. Wilson emphasized that the XXXX XXXXXXXXXX pattern of PAE's distribution pricing, including line items regarded as overstated or understated, was integral to DLA's Round 3 determination that PAE's distribution pricing was "unbalanced" under FAR 15.404-1(g).  *See, e.g.*, Tr. at 20, 22, 26, 32, and 40.

B. **DLA's Discussions with PAE**

When DLA opened discussions with PAE in August 2020 (*See* AR 2190), the distribution line item pricing in PAE's bid featured the XXXXXXXXXXXX pattern, described above.  *See, e.g.,* AR 2849-50.

DLA's Round 1 Discussion Letter – responding to PAE's initial pricing, suggested that PAE "improve" its pricing for Drop Ship Tiers XXXXXX, and "improve" the pricing for Non-

---

[3] Merriam-Webster's Collegiate Dictionary (10th ed. 2001) XXXX.

Drop-Ship Tiers XXX.  AR 2193-94.  The Round 1 discussion letter did not identify "unbalanced" pricing, nor did it include any further warnings about pricing.  *Id.*

On August 18, 2020, PAE responded to DLA's Round 1 Discussion Letter, annotating the Letter to show that it had made reductions in the requested tiers.[4]  AR 2297-98.  XXXX XXXXXXXXX PAE maintained the XXXXXXXXXXXXXXXXXX pattern in the proposed distribution pricing.  *See* AR 2311-12.

On December 18, 2020, DLA sent PAE its Round 2 Discussions Letter.  AR 3125-3128.  Similarly to the Round 1 letter, the Round 2 Letter advised PAE to "improve" its pricing for Drop Ship Tiers XXX,[5] and for Non-Drop Ship Tiers XXXXX for XX Pricing Periods.  AR 3127-28.  As with the Round 1 Discussions Letter, DLA's Round 2 Discussions Letter did not identify unbalanced pricing in DLA's bid, nor did it include a boldface "**cannot be determined fair and reasonable**" warning.  *Id.*

On January 5, 2021, PAE responded to DLA's Round 2 Discussions Letter XXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXX[6]  AR 3127-28; AR 3390-92; *see also* AR 2311-12 in comparison to AR 3497-98 XXXXXXXXXXXXXX pricing after Round 1 and after Round 2).

Next, XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXX DLA conducted its post-Round 2 price analysis, assessing the distribution line item prices for all bidders.  *See* AR 3549-50.

---

[4] Specifically, in Pricing Period X, for example, PAE reduced its pricing for Drop Ship Tiers XX by XXXXXXXXXXXXX, and reduced its prices for Drop Ship Tiers XXX by XXX XXXXXXXXXXX.  PAE reduced Drop Ship Tier XX by XXXXXXXXXXXXXXXXX.  *See* AR 2311-12.  Also as suggested by the Government, PAE reduced its Non-Drop Ship pricing – Tiers XXX were reduced by XXXXXXXXXXXXX and Tiers XXX were reduced by XXXX XXXXXXXXXXXXX.  *Id.*

[5] DLA's Round 2 Discussions Letter requested that PAE "improve" pricing for Drop Ship Tiers XXX in Pricing Period X, and Drop Ship Tiers XXX in Pricing Periods XX.  AR 3127-28.

[6] DLA requested that PAE "improve" its distribution pricing for Drop Ship Tiers XXX XXXXXXXXX, Drop Ship Tiers XXXXXXXXXXXXXXXXXX, and Non-Drop Ship Tiers X and XXXXXXXXXXXXXX.  AR 3127-28; AR 3390-92.  XXXXXXXXXXXXXXXXXXXXXX. XXXXXXXXXXX. With respect to Drop Ship distribution, for Pricing Period X, Tiers XX XXXXX at XXXX, and Tiers XXXXXXXX at XXXX; for Pricing Period X, Tiers XXXXX at XXXX; for Pricing Period X, Tiers XXXXXXX at XXXX.  AR 3497-98.  With respect to Non-Drop Ship distribution, for Pricing Period X, Tier XXXXXX at XXXX, Tiers XXXXXXXX at XXXXX, and Tiers XXXXXXX at XXXXX; for Pricing Period X, Tier XXXXXXX at XXXX, Tiers XXXXXXXX at XXXX, and Tiers XXXXXXXXX at XXXXX; for Pricing Period X, Tier XXXXXXX at XXXX, Tiers XXXXXXXXX at XXXX, and Tiers XXXXXXXX at XXXXX.  *Id.*

On February 2, 2021, DLA sent its Round 3 Discussions Letter to PAE.  Unlike its Round 1 and Round 2 Discussion Letters to PAE, DLA's Round 3 Letter fundamentally changed its response to PAE's pricing: DLA requested that PAE "improve" Drop Ship Tiers X and Non-Drop Ship Tiers XXX, but for the first time also (A) detected "unbalanced" pricing in PAE's bid and (B) warned PAE that the pricing for Drop Ship Tiers XX and Non-Drop Ship Tiers XXX "**cannot be determined fair and reasonable**," applying to these tiers for XXXXXXXXXX XXXX.  AR 3744-45 (original emphasis).  For Pricing Period X, PAE's respective prices in Drop Ship Tiers XXX were XXXXXXXXXX higher than the Government's maximum estimate.  *See* AR 3549-50.  Notably, for Pricing Period X, PAE's price for Drop Ship Tier X was XXX XX higher than the Government's estimate.  *Id.*  For Pricing Period X, PAE's price for this Tier XXXXXXXXXXX higher than the Government's Estimate.  *Id.*  For Non-Drop Ship Distribution, for Pricing Period X, PAE's respective prices for Non-Drop Ship Tiers X were XX XXXXXXXXXXXXXXXX than the Government's maximum estimate.  *Id.*  For Pricing Period X, PAE's price for Tier XXXXXXXXXXXXX higher than the Government's maximum estimate.  *Id.*

On February 5, 2021, in response to the boldface warning contained in the Round 3 Discussions Letter, PAE updated its distribution pricing XXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXX.  AR 3883-88, 3899-3900.

To recap: the distribution pricing of PAE's initial bid XXXXXXXXXXXX reflected a XXXXXXXXXXXXXXXXX pattern.  *See* AR 2215-16.  In response, DLA's Round 1 Discussions Letter suggested in plain (non-bold) font that PAE "improve" its pricing in a few tiers.  AR 2297-98.  PAE then made XXXXXXXX reductions in the identified tiers, and left the XXXXXXXXXXX pattern in place.  *See* AR 2311-2312.  Then, after PAE's XXXX reductions, DLA's Round 2 Discussions letter again sent a plain (non-bold) font instruction suggesting that PAE "improve" its pricing in a few tiers.  AR 3125-3128.  XXXXXXXXXXXXXXXXXX XXXXXXXX the XXXXXXX pattern remained in place.  *See* AR 3391-92, 3497-98.  XXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX.  XXXXXXXX.  *See* AR 2849-50; AR 3497-98.  Then, DLA's Round 3 Discussion Letter, responding to PAE distribution tier pricing XXXXXXXXXXXXXXXXXXX, *dramatically deviated* from the Discussion Letters sent in Rounds 1 and 2: the Round 3 Letter repeated the plain font "improve" instruction, but for the first time announced an "unbalanced" pricing finding and a warning that the pricing of certain tiers "**cannot be determined fair and reasonable**" (original emphasis).  AR 3744-45.  In response, PAE XXXX adjusted its pricing X XXXXXXXXXXXXXXXXXXXXXXXXXX.  AR 3899-3900.

### C. DLA's Discussions with SupplyCore

In all three Rounds of discussions, DLA's Discussion Letters to SupplyCore advised SupplyCore, in plain (non-bold) font to "improve" its Drop Ship and Non-Drop Ship distribution tier pricing.  *See* AR 2223-24 (Round 1 Discussion Letter), AR 3151 (Round 2 Discussion Letter) and AR 3748-49 (Round 3 Discussion Letter).

8

DLA's internal price analysis in each Round confirmed that SupplyCore's distribution pricing was XXXXXXX higher than the Government's maximums in XXX tiers, XXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXX. *See* AR 2849-2850 (Round 1); AR 3549-3550 (Round 2).

Notably, in both its Round 1 and Round 2 distribution pricing, SupplyCore's price for Non-Drop Ship Tier X was XXXXXX higher than the Government's estimate in XXXXX XXXX.[7] AR 2849-2850, 3549-3550. Similarly, as stated above, PAE's Drop Ship Tier X was XXXXX times higher than DLA's maximum XXXXX, and PAE's Non-Drop Ship Tier X price in Price Period X was XXXXX higher than the Government's Estimate. *See* AR 3549-50.

Round 2 Distribution Price Bids

| Tier | Number of Items (Estimate) | Bid Price | Government's Estimated Max | Bid Relative to Government's Estimated Max | Round 3 Feedback (original emphasis): |
|---|---|---|---|---|---|
| Drop Ship Tier X (PAE) | XXX | XXX | XXX | XXX | **"cannot be determined fair and reasonable"** |
| Drop Ship Tier X (PAE) | XXX | XXX | XXX | XXX | **"cannot be determined fair and reasonable"** |
| Drop Ship Tier X (PAE) | XXX | XXX | XXX | XXX | **"cannot be determined fair and reasonable"** |
| Non-Drop Ship Tier X (PAE) | XXX | XXX | XXX | XXX | **"cannot be determined fair and reasonable"** |
| Non-Drop Ship Tier X (PAE) | XXX | XXX | XXX | XXX | **"cannot be determined fair and reasonable"** |
| Non-Drop Ship Tier X (PAE) | XXX | XXX | XXX | XXX | **"cannot be determined fair and reasonable"** |

---

[7] Specifically, in both Rounds 1 and 2, SupplyCore's proposed Non-Drop Ship Tier X price for Price Periods XXXXX was XXXXX, while the Government's maximum estimate was XXXX. AR 3549-3550.

| | | | | | |
|---|---|---|---|---|---|
| Non-Drop Ship Tier X (PAE) | XXX | XXX | XXX | XXX | **"cannot be determined fair and reasonable"** |
| Non-Drop Ship Tier X (PAE) | XXX | XXX | XXX | XXX | **"cannot be determined fair and reasonable"** |
| Non-Drop Ship Tier X (SupplyCore) | XXX | XXX | XXX | XXX | "improve," along with all other Tiers |

Despite the fact that both SupplyCore's and PAE's pricing was XXXXXXX higher than the Government's estimate, DLA's Discussion Letters to SupplyCore did not distinguish SupplyCore's Non-Drop Ship Tier X price from other tiers; instead, DLA suggested that SupplyCore only "improve" Tier X in all three Rounds, along with XXXX other distribution fee tier prices. *See* AR 2224 (Round 1), AR 3151 (Round 2) and AR 3748-49 (Round 3). However, when it came to PAE, DLA's Round 3 Discussions Letter warned PAE that PAE's prices for these tiers, XXXXXXXXXXXXX, "**cannot be determined fair and reasonable**" (original emphasis).  AR 3744-45.

### III.   Discussion

#### A.   Court's December 28 decision

The Court's December 28, 2021, Opinion and Order held that with respect to the Zone 2 contract: "DLA's Round 3 unreasonable price warning to PAE and not to SupplyCore plus DLA's award to PAE despite the fact that PAE declined to respond to the unreasonable price warning amounts to an arbitrary and capricious award decision." ECF No. 37 at 9.  This holding was based on two key findings of fact:

1. The Court found that in the Round 3 discussions, DLA (A) warned PAE, in boldface, that subsets of PAE's distribution pricing "**cannot be determined fair and reasonable,**" but (B) only informed SupplyCore that it should "improve" its distribution pricing, even though SupplyCore's XXXXXXXXXXXXX price was XXXXXX higher than PAE's. *Id.* at 5-6.
2. The Court found that PAE did not respond to DLA's warning because after DLA's Round 3 warning about unreasonably high pricing, PAE's *aggregate* distribution price XXXXXXXXXXXXXXXXXXX.  *Id.* at 6 XXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXX.

The Government's January 24, 2022, Motion for Reconsideration argued that the Court's decision reflected errors stemming from "a misapprehension of the record for which reconsideration is a uniquely appropriate remedy." ECF No. 41 at 5.

10

First, the Government argued that the "**cannot be determined fair and reasonable**" warning to PAE (and not to SupplyCore) reflected an unbalanced pricing finding, and that DLA found *only* PAE's distribution tier pricing unbalanced, purportedly accounting for the uneven representations to the two bidders. *See* ECF No. 41 at 5-8; *see also* FAR 15.404-1(g)(1) (FAR definition of "unbalanced" pricing).

Second, the Government argued that the AR indicates that PAE did, in fact, respond to the Round 3 warning. ECF No. 41 at 10. XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX, PAE's line items were, in fact, "rebalanced" so that more substantial changes were evident from examining the pricing at the line-item level. *See id.* The Government also argued that the Court's analysis had incorrectly relied upon PAE's aggregate distribution pricing rather than specific distribution fee line items. *Id.* at 7. While the Court's December 28 Opinion had recognized that the terms of the RFP required price analysis at the line-item level (*see, e.g.,* ECF No. 37 at 10), and while aggregate pricing reflects the underlying line item pricing, the Court's decision indeed prominently referenced PAE's aggregate distribution pricing.

On February 22, 2022, the Court issued an Order which recognized that the Government's position was "plausible." ECF No. 46 at 1. The Court further noted that the Government's only pre-ruling account of an unbalanced pricing was found in a footnote of its Reply Brief; on top of this, it was only as of the Government's post-ruling Motion for Reconsideration that the Government substantially addressed unbalanced pricing. ECF No. 46 (citing ECF No. 35 at 10 n. 3 and ECF No. 41 at 10). In addition, the DLA's Round 3 Discussion Letter to PAE (i.e., the AR itself) did not definitively establish that the "**cannot be determined fair and reasonable**" warning to PAE was an unbalanced pricing representation. *See* AR 3744-45. The Court ruled that the existing record was insufficient.[8] ECF No. 46.

---

[8] A Court may supplement the existing record "if the existing record is insufficient to permit meaningful review consistent with the [Administrative Procedure Act ("APA"), 5 U.S.C. 706(2)(A)]." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009). Furthermore, Rule 59(a)(2) states that "[t]he court may, on motion under this rule, . . . take additional testimony." *Entergy Nuclear FitzPatrick, LLC v. United States*, 711 F.3d 1382, 1386 (Fed. Cir. 2013) (citing *Yuba Natural Resources, Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990)). ECF No. 52. *See also Academic Facilities Management v. United States*, 87 Fed. Cl. 441 (2009). In *Academic Facilities* a protestor alleged unequal discussions because the awardee had been advised that some of its pricing was "significantly overstated," while the protestor was only advised that items were "overstated." *Id.* at 453-54. The Government argued that the apparently more detailed feedback to the awardee (and not the protestor) justifiably reflected an "unbalanced" pricing finding under FAR 15.404-1(g) (unbalanced pricing), and moved to introduce an affidavit supporting this argument. *Id.* at 454. The protestor objected, contending that the Government was wrongfully supplementing the record. *Id.* The Court ruled that the affidavit should be admitted because confirming that the apparent extra feedback was in fact an "unbalanced" pricing representation was "necessary to ensure 'meaningful' and 'effective' judicial review by [the] court"; the record without the affidavit did not definitively establish whether the Government's representation had in fact been "unbalanced" pricing feedback. *Acad. Facilities Mgmt.*, 87 Fed. Cl. at 454 (citing *Axiom Res. Mgmt., Inc. v. United*

11

This set the stage for the March 9 hearing and enabled this Court to further understand and analyze the key issues in this case.

### B. DLA Arbitrarily Found PAE's Distribution Pricing "Unbalanced" in Round 3 but not in Rounds 1 and 2

FAR 15.404-1(g) sets the baseline for unbalanced pricing findings. FAR 15.404-1(g) stipulates that "Unbalanced pricing exists when, despite an acceptable total evaluated price, the price of one or more line items is significantly over or understated as indicated by the application of cost or price analysis techniques." FAR 15.404-1(g). According to Matheu Wilson, the Contracting Officer for the DLA, the FAR also "requires" that an agency "call[] out" unbalanced pricing when it is found. Tr. 30; *see also* Tr. 26. Mr. Wilson further testified that in fact, "… as soon as we identified the instances of overpricing through the unbalanced methodology, that's when we included it within the discussion letter, and that's why we … used the terminology that we used [in the Round 3 Discussion Letter to PAE]." Tr. 28.

At the March 9 hearing, Mr. Wilson testified repeatedly that a certain XXXXXXX XXXX pattern in PAE's distribution line item pricing was a XXXXXXXXXXXXXX factor in DLA's finding that, in Round 3, PAE's pricing was "unbalanced." See Tr. at 20, 22, 26, 32, and 40. For example, in one instance, the Court asked Mr. Wilson "how [he] came to the conclusion that there was unbalanced pricing with regard to PAE and not with regard to SupplyCore." Tr. at 32. Mr. Wilson responded, in part, by pointing to PAE's pricing and observing XXXXXXX XXXXXXXXXXXXXXXXXXXXX *Id.*[9]

However, PAE's XXXXXXXXXX pattern was present in its distribution line item pricing right from the outset. *See, e.g.*, AR 2215-16. In Round 1, DLA did not reach an unbalanced pricing finding; in response, PAE made XXXXXXX changes to the distribution tier prices where DLA requested an "improve[ment]," and the XXXXXXXXXXXXXX pattern remained in place. In Round 2, DLA again did not reach an unbalanced pricing finding – DLA merely requested further "improve[ment]." *See* AR 3125-28. In response, PAE XXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX in other words, the distribution pricing questioned by DLA in its Round 2 letter XXXXXXXXXXXXXXX when

---

*States*, 564 F.3d 1374, 1380-81 (Fed. Cir. 2009)). The scenario here is even more ripe for supplementing the record than that in *Academic Facilities Management* because in that case, the Court sought to clarify whether use of the term "significantly overstated" – which appears directly in FAR 15.404-1(g) – was in fact an "unbalanced" pricing representation. *Acad. Facilities Mgmt.*, 87 Fed. Cl. at 453. More ambiguously, here, "cannot be determined fair and reasonable," does *not* appear in the text of FAR 15.404-1(g).

[9] The Court notes that, in addition to a group or pattern of prices, under the plain text of FAR 15.404-1(g), "unbalanced" pricing can exist without reference to a pattern of pricing, or numerous prices, because the rules expressly state that "unbalanced" pricing may be found with reference to "***one or more*** line items [which] is significantly over *or* understated…." FAR 15.404-1(g) (emphasis added).

DLA sent its Round 3 discussion letter. *See* AR 2311-2312 (PAE distribution pricing submitted in response to Round 1 Discussion Letter), XXXX AR 3497-98 (PAE distribution pricing submitted in response to Round 2 Discussion Letter); *see also* AR 3390-92.

Then, only in Round 3, XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXX did DLA reach an "unbalanced" pricing finding. Also, PAE's distribution line items had XXXXXXXXX the same XXXXXX pattern identified by Mr. Wilson as contributing substantially to an unbalanced pricing finding. This seems difficult to reconcile with Mr. Wilson's statement that the FAR "requires" an agency to "call[] out" unbalanced pricing when it is identified. *See* Tr. 30; *see also* Tr. 26.

If, as Mr. Wilson testified, the XXXXXXXXXXXXXX pattern was a major or crucial factor to the unbalanced pricing finding, it is puzzling that DLA did not identify unbalanced pricing in Rounds 1 and 2. In Round 3, DLA suddenly changed course XXXXXXXXXXXX XXXXXXXXXXXX and "found" unbalanced pricing which it had not "found" XXXXXXXX XXXXXXXXXXXXXXXXXXXXXXX in Rounds 1 and 2. AR 3744-45; *see also* AR 2311-2312 (PAE distribution pricing submitted in response to Round 1 Discussion Letter), XXXXX AR 3497-98 (PAE distribution pricing submitted in response to Round 2 Discussion Letter).

In sum, DLA did not "call out" as unbalanced the XXXXXXXXXXXXXXXXXXXXX pricing that existed in PAE's bid in Rounds 1 and 2. This leads the Court to conclude that DLA's Round 3 unbalanced pricing and "**cannot be determined fair and reasonable**" findings were arbitrary.

### C. DLA's Round 3 "Cannot be Determined Fair and Reasonable" Findings Treated PAE and SupplyCore Unequally

In addition to not identifying unbalanced pricing with regard to PAE in Rounds 1 and 2 (despite the fact that this was evident), the Court further holds that PAE and SupplyCore were treated unequally even though they both had distribution line item prices XXXXXXXXXX XXXXXX above the Government's maximum estimate.

i. FAR 15.404-1(g) and the Basis of an "Unbalanced" Pricing Finding

This Court observed, *supra*, in section B, that the Government's representation that a pattern of prices triggered an "unbalanced" pricing finding does not conflict with the text of FAR 15.404-1(g). Indeed, the text states, "Unbalanced pricing exists when, despite an acceptable total evaluated price, the price of ***one or more*** line items is significantly over ***or*** understated as indicated by the application of cost or price analysis techniques." FAR 15.404-1(g) (emphasis added). Thus, under the plain text of the FAR, an agency could detect unbalanced pricing based on a group of prices or even only one price being identified as "significantly over or understated." *Id.*

13

Mr. Wilson's testimony did not clarify very much the basis for an unbalanced pricing determination. Even though Mr. Wilson was evidently familiar with the FAR and its text, he meandered when questioned about the basis of an unbalanced pricing finding – both in general and relative to the specifics of this case. Mr. Wilson seemed to accept that an over or understated price in one tier (or a small number of tiers) would trigger an unbalanced pricing determination as well as a XXXXXXX pricing determination by comparing more than one tier. Early in the hearing, the Court asked Mr. Wilson about the "unbalanced" pricing finding, and Mr. Wilson tied this finding directly to DLA's evaluation of the tier prices which were identified as "**cannot be determined fair and reasonable**":

> The conclusion that [PAE's pricing] was unbalanced, Your Honor, is basically the identification of the unacceptable pricing in the XXXXX tiers, but, yes, in general, the -- any time we see XXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX that would be essentially unbalanced pricing.

Tr. at 17.

Later, expressing concern about the consistency of Mr. Wilson's answers, the Court asked to expressly clarify DLA's position about the conditions triggering "unbalanced" pricing. When the Court – reacting to Mr. Wilson's testimony – suggested XXXXXXXXXXXX that "unbalanced" pricing sounded like a widespread pattern of "understated" and "overstated" pricing, Mr. Wilson agreed.

> THE COURT: … I think I asked this question earlier and I got a different answer, so I'm going to ask it again, and that is, again, am I right in thinking, looking at the "PAE" column, that because we have overstated items and we have understated items that that rings the bell of unbalanced?
> THE WITNESS: I would say, Your Honor, in accordance with FAR Part 15-404, there -- as far as a description and definition would essentially go, it's basically where the overall price would essentially be acceptable, but elements of the pricing is significantly overstated or understated.
> THE COURT: Um-hum. Well, that sounds to me like what I just said.
> THE WITNESS: And that's a --
> THE COURT: Would you agree?
> THE WITNESS: Yes, and that's what we identified with the PAE's pricing, you know, whereas, you know, their final pricing was X, their initial pricing was XX, and that -- and the overall is -- you know, the overall price at the end of the day was approximately XXXXX because it was XXXXXXX a reallocation to mitigate the risk that the Government would experience.

Tr. at 42-43. When Mr. Hughes, counsel for SupplyCore, asked Mr. Wilson for clarification, Mr. Wilson seemed to hold to the position:

14

> THE WITNESS: …the reason why we had the risk to the Government essentially on PAE-IMK is unbalanced pricing. Unbalanced pricing did not exist with SupplyCore's proposal.
> MR. HUGHES: What makes you say that?
> THE WITNESS: Well, the definition essentially of unbalanced pricing in the FAR. So you have essentially what otherwise would be a total aggregate acceptable price, and you have prices that are overstated in some instances and understated in others. XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXX.

Tr. at 59-60.

In sum, Mr. Wilson appeared to vacillate with respect to (1) generally, what kinds of pricing dynamics trigger an "unbalanced" pricing finding and (2) specifically in this case, whether the "unbalanced" pricing stemmed from a general widespread pattern in PAE's pricing or more narrowly from the specific tiers identified by DLA in Round 3 as "**cannot be determined fair and reasonable**." As noted above, FAR 15.404-1(g) is itself flexible on point 1, where "one or more" line items which are "significantly over or understated" may trigger an unbalanced pricing finding. FAR 15.404-1(g). However, Mr. Wilson was not clear about point 2, which is important to this section of the case.

>> ii. The Government's "unbalanced" price and "**cannot be determined fair and reasonable**" findings at least in part reflected the degree to which PAE exceeded the Government's maximum estimate in certain tiers, but SupplyCore similarly exceeded the Government's maximum estimate in at least one instance.

As noted above, Mr. Wilson separately attributed DLA's "unbalanced" PAE distribution price finding to (1) the general XXXXXXXX pattern of PAE's pricing, and (2) narrow scrutiny of only the lower distribution tiers ultimately identified as "**cannot be determined fair and reasonable**" (original emphasis).

The PAE tiers identified in Round 3 as "**cannot be determined fair and reasonable**" are those XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXX.[10] *See* AR 3549-3550. However, SupplyCore's Round 2 bid included a Tier X price which exceeded the Government's estimate XXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXX – but SupplyCore was merely instructed by DLA to "improve" its price, with no "unbalanced" price finding. *Id.* This raises inferences of unequal and arbitrary treatment.

The Government appears conflicted with respect to the basis by which these specific tier prices were identified as "unbalanced" and "**cannot be determined fair and reasonable**," and, more specifically, the role of the Government's maximum negotiation estimates. On one hand, the Government's Reply Brief and Motion for Reconsideration present the "unbalanced" price

---

[10] This applied specifically to PAE's pricing for Drop Ship Tiers XX and Non-Drop Ship Tiers XX. AR 3744-45. SupplyCore did not receive such a warning. *See, e.g.*, AR 3748-49.

15

and "**cannot be determined fair and reasonable**" findings with reference to the XXXXXX XXXXXXXXX Government's maximum estimates.[11]  *See* ECF No. 35 at 11 n.3[12]; *see also* ECF No. 41 at 9 (citing AR 3549-50).[13]  Earlier in the hearing, Mr. Wilson testified that "The conclusion that [PAE's pricing] was unbalanced, Your Honor, is basically the identification of the unacceptable pricing in the XXXXX tiers…" Tr. at 17.  On the other hand, Mr. Wilson also separately described the maximum estimates as very narrowly determining whether XXXXX XXXXXXXX,[14] XXXXXX bidders were thereby instructed to "improve" the given price:

> XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
> XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
> XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
> XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
> XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX.

Tr. at 62.

Following the lead of the Government's briefs – presenting "unbalanced" pricing in terms of the Government's estimates[15] – a trend becomes apparent from examining the PAE's distribution tiers identified as "**cannot be determined fair and reasonable**" (Drop Ship Tiers X X and Non-Drop Ship Tiers XX): these were the tiers where PAE's proposed price XXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXX.  Indeed, comparing PAE's Period X pricing to the estimated maximums, it is mathematically the case that PAE's price for Drop Ship Tiers XX was XXXXXXXXXXXXXXXX higher than the Government's maximum, and for Non-Drop Ship Tiers XX, PAE's price was XXXXXXXXXXXXXXXXXXX higher than the Government's maximum.  *See* AR 3549-3550.  As stated above, PAE's Tier X Drop Ship price

---

[11] The Government's briefs present "unbalanced" pricing with respect to both the Government's maximum *and* minimum estimates for distribution tier line items.  *See* ECF No. 35 at 11 n. 3; ECF No. 41 at 9.  However, as discussed *infra* in (C)(iii), the Government and Mr. Wilson equate the risk calculus underlying "unbalanced" pricing as overwhelmingly relating to the risk of overpayment, rather than the risk of underpayment.  *See infra*; *see also* Tr. 25.

[12] "[PAE's Tier X Drop Ship price was] XXXX higher than the agency's maximum objective for that tier/pricing period." ECF No. 35 at 11 n.3

[13] "PAE-IMK's proposed drop ship distribution prices for XXXXXXXXXX tiers, XXXX XXXXXXXXXXXXX, amounted to XXXXXXXXXXXXXXXXXXXXXXX of the maximum values of line items within those tiers, respectively . . . . Similar and even greater disparities existed within XXXXXXXXXXXXX of PAE-IMK's XXXXXX non-drop ship distribution fee pricing, XXXXXXXXXXXXXXXXXXXXXX, and amounted to XXXXXXXXXXXX, of the maximum line-item values, in some cases." ECF No. 41 at 9.

[14] According to Mr. Wilson's testimony, XXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXX, this means that the price exceeded the Government's maximum negotiation objective for that tier. Tr. at 12.  The fact that XXXXXXXXXXXXXXX XXX does not necessarily mean that the agency has made a price reasonableness determination on it.  Tr. at 15-16.  XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXX.

[15] *See supra* note 11.

XXXXXXXXXXXXXXXXXXXXXXXX higher than the Government's maximum in Pricing Periods XXXX.  *Id.*  Also, PAE's Tier X Non-Drop Ship Price XXXXXXXXXXXXXXX the Government's maximum in Pricing Period X.  *Id.*  Again, these tier prices represent the XXXX XXXXXXXX disparities in XXX PAE's proposed distribution prices as of the Round 3 Discussion Letter.  *See* AR 3549-50; AR 3744-45.  This aligns with Mr. Wilson's statement that the "unbalanced" pricing finding reflected XXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXX.  *See* Tr. 17.

At the same time, SupplyCore's Non-Drop Ship Tier X price after Round 2 was XXX XXX higher than the Government's estimate XXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX, and XXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXX.  *See* AR 3549-3550.  XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX.  *Id.*

Thus, in summary, it seems apparent that the Government's Round 3 "unbalanced" price and "**cannot be determined fair and reasonable**" findings at least in part reflected XXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXX.  But, if this is the case, then how can the Government maintain that PAE's Drop Ship Tier X price "**cannot be determined fair and reasonable**" and contributed significantly to an "unbalanced" pricing finding because it was XXXXXXXX higher than the Government's maximum, while also maintaining that SupplyCore's Non-Drop Ship Tier X price – XXXXX higher than the Government's maximum – does not raise such concerns.

The Government's position is murky with respect to the relationship between the maximum estimates for distribution tiers and DLA's unbalanced pricing finding.  XXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX.  Therefore, the fact that, e.g., PAE's price for Drop Ship Tier X was XXXXXXXX higher than the Government's estimate and was found "unbalanced" and "**cannot be determined fair and reasonable**," and SupplyCore's price Non-Drop Ship Tier X was XXXXX higher than the Government's estimate, but only received a plain font "improve" instruction, raises inferences of arbitrariness and unequal treatment.

   iii. "Risk" in Conjunction with the Government's Misaligned Round 3 Representations to PAE and to SupplyCore

Also supporting the Court's holding that DLA's Round 3 warning to PAE (and not to SupplyCore) raises an inference of arbitrariness and unequal treatment is the Government's representations about risk.  Far more estimated money is at stake – or, at "risk" – in Non-Drop Ship Tier X than in the XXXX tiers.

17

At the heart of the Round 3 "**cannot be determined fair and reasonable**" warning sent to PAE was the perception of risk.[16] DLA agreed that "risk" for the purpose of this solicitation specifically connotes the risk of Government overpayment, measured at the tier level, also weighing the number of anticipated orders for the given tier:

> THE COURT: **So does risk then equate with the Government has to pay too much?**
> THE WITNESS: That is -- so that is one aspect of it. The other aspect of it would be ultimately our ability to determine it to be fair and reasonable, so -- but, **yes, in general, in relation to the XXXXXX tiers, based on the severity of the pricing in relation to the dollar ranges of the fee tiers, overpricing and, you know, the Government paying way too much on a very large amount of orders was pretty significant, to the point where we were unsure whether or not we would even be able to find that fair and reasonable…**

Tr. at 25 (emphasis added).  Mr. Wilson also emphasized that overpayment-related risks far outweighed risks associated with underpayment.  Tr. at 25.[17]

This description of risk does not comfortably accord with sending a materially stronger warning to PAE than to SupplyCore.  SupplyCore's distribution line item pricing is XXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXX while PAE's is not.  XXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX.  However, even a strict percentage-based approach to "unbalanced" pricing does not explain the Government flagging PAE's Drop Ship Tier X price and not flagging SupplyCore's Non-Drop Ship Tier X price.  Also, the Government's recognition that "risk" is tied to concern about overpayment arguably amplifies this misalignment because Non-Drop Ship Tier X is generally more costly than the lower tiers, based both on the pricing and the anticipated number of items to be shipped.  *See* AR 3550.

DLA found PAE's relatively high pricing for XXXXXXXXXXXXXX distribution tiers "unbalanced" while at the same time did not find SupplyCore's seemingly "risky" pricing in XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX – unbalanced.  DLA's acknowledgment that risk of overpayment was central to the Round 3 warning sent to PAE (and not to SupplyCore) further supports the Court's holding that SupplyCore was treated arbitrarily and unequally.

### IV.     Conclusion

---

[16] Mr. Wilson stated that the Government's unbalanced pricing findings reflected the agency's concern about "unacceptable risk" to the Government.  *See, e.g.*, Tr. 14.

[17] "… the underpricing risk doesn't really provide the same type of risk as what -- if we were to overpay for a very large volume number of tiers and products."  Tr. at 25.

The Court holds that DLA's "unbalanced" pricing finding with respect to PAE in Round 3 was arbitrary because no such finding was issued in response to PAE's XXXXXXXXX XXXXXXXXX distribution tier line item pricing in Rounds 1 or 2. Mr. Wilson repeatedly emphasized that the Round 3 "unbalanced" pricing finding significantly stemmed from a XXX XXXXX pattern in PAE's distribution pricing – but XXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXX only in Round 3 did DLA make an unbalanced pricing finding. This appearance of arbitrariness was amplified by Mr. Wilson testifying that (A) the FAR "requires" an agency to identify unbalanced pricing when it is found (Tr. at 30; *see also* Tr. at 26) and (B) that DLA in fact did identify unbalanced pricing "as soon as we identified the instances of overpricing through the unbalanced methodology." Tr. at 28.

The Court also holds that the Round 3 "**cannot be determined fair and reasonable**" unbalanced pricing warning sent to PAE and not to SupplyCore reflects arbitrariness and unequal treatment. Mr. Wilson was inconsistent about the basis of DLA's "unbalanced" pricing finding. The Government's briefs presented DLA's "unbalanced" finding with reference to the Government's estimates, and these "unbalanced" findings applied specifically to the PAE tier prices XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX. While SupplyCore's Round 2 pricing included one XXXXXX tier price (Non-Drop Ship Tier X) which exceeded the Government's maximum XXXXXXXXXXXXXXX, DLA instead merely instructed SupplyCore to "improve" this tier price. This inequality and arbitrariness is amplified by Mr. Wilson stating that DLA's "unbalanced" findings reflected the risk of overpayment XXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX.

The Court holds that DLA's finding, only as of Round 3, that PAE's pricing was "unbalanced" and that some of its distribution pricing line items "**cannot be determined fair and reasonable**" was arbitrary. The Court further holds that DLA's Round 3 warning to PAE and not to SupplyCore reflected unequal treatment, and also arbitrariness. The Government's Motion for Reconsideration is **DENIED**.

The parties are directed to file redactions **within seven (7) days** of the date of this Opinion and Order.

**IT IS SO ORDERED.**

s/ Edward J. Damich
EDWARD J. DAMICH
Senior Judge