# In the United States Court of Federal Claims

No. 21-1861C
(Filed Under Seal: September 15, 2022)
(Reissued for Publication: September 29, 2022)[1]

```
*************************************
                                    *
SUPPLYCORE INC.,                    *
                                    *
            Plaintiff,              *
                                    *
      v.                            *
                                    *
THE UNITED STATES,                  *
                                    *
            Defendant.              *
                                    *
      and                           *
                                    *
NOBLE SALES CO., INC., d/b/a        *
NOBLE SUPPLY AND LOGISTICS,         *
                                    *
      and                           *
                                    *
PAE-IMK INTERNATIONAL, LLC,         *
                                    *
      Defendant-Intervenors.        *
                                    *
*************************************
```

Attorney Fees, The Equal Access to Justice Act, 28 U.S.C. § 2412(d), The Substantially Justified Standard, 28 U.S.C. § 2412(d)(1)(A), Cost of Living Adjustment.

## OPINION AND ORDER

Before the Court is Plaintiff's, SupplyCore, Inc.'s, Motion for Attorney fees and the United States' (the "Government's") opposition to it.

As background: the Defense Logistics Agency's (the "DLA") awarded two contracts under one Request for Proposals ("RFP"): a "Zone 1" contract was awarded to Noble Supply and Logistics ("Noble"), and a "Zone 2" contract was awarded to PAE-IMK International, LLC

---

[1] The Court issued this opinion under seal on September 15, 2022, and the Court gave the parties ten days to propose the redaction of competition-sensitive, proprietary, confidential, or otherwise protected information.  The parties did not file any proposed redactions.  Thus, the Court issues the original opinion unsealed.

("PAE").  Shortly thereafter, Plaintiff filed protests with the Government Accountability Office ("GAO") contesting both zone awards.  The GAO denied the protests.

Plaintiff filed a post-award bid protest with this Court, challenging both awards.[2]  *See* ECF No. 29.  In its complaint, Plaintiff asserted that the "DLA failed to evaluate all proposals for price reasonableness as required by the Solicitation and failed to conduct meaningful discussions with Plaintiff as required by [Federal Acquisition Regulation (FAR)] 15.306(d)(3)."  ECF No. 1 at 2.  Plaintiff then filed a Motion for Judgment on the Administrative Record.  ECF No. 29.  The parties replied in further support of their positions.  ECF Nos. 33-36.

This Court issued an Opinion and Order partially Granting and partially Denying Plaintiff's bid protest.  ECF No. 37.  The Court granted Plaintiff's Motion with respect to Zone 2, enjoined DLA from continuing performance of the awarded contract, and directed the DLA to cancel the award to PAE.  *Id.*  The Court denied Plaintiff's Motion with respect to the Zone 1 contract awarded to Noble.  *Id.*  In the Court's opinion, this Court held that the DLA's Zone 2 award to PAE was arbitrary and capricious because the DLA had engaged in unequal Round 3 discussions that favored PAE and competitively prejudiced Plaintiff.  ECF No. 40 at 2, 8-9.  This holding was based on three factual findings.  *See id.*

The Government filed a Rule 59(a) Motion for Reconsideration with respect to the Court's Zone 2 holding.  ECF No. 41.  This Court issued an Order finding that errors had been made in the Court's Opinion and Order.  ECF No. 46.  The Court's Order also set a hearing because issues at the heart of the case – DLA's Round 3 finding of "unbalanced" pricing and warning message about pricing that "**cannot be determined fair and reasonable**" (original emphasis) – remained ambiguous in spite of the Administrative Record ("AR").  These issues also were not adequately addressed by the Government's briefs.  *Id.*

The Government then filed a second Motion for Reconsideration responding to the Court's Order, arguing (A) that the Court should not supplement the AR with a hearing and (B) that Plaintiff bears the burden of proof in the case.  ECF No. 47.  The Court issued an Order Granting in part and denying in part the Government's second Motion for Reconsideration.  The Court denied the Government's argument that the Court may not supplement the Administrative Record and granted the Government's argument that Plaintiff carries the burden of proof.  ECF No. 52.  The Court then conducted the hearing.  ECF No. 55.

This Court issued an opinion upholding its decision and denying the Government's Motion for Reconsideration, finding in relevant part that the: (1) DLA's finding that PAE distribution line items were "unbalanced" and "**cannot be determined fair and reasonable**" was arbitrary because even though relevant PAE line item pricing was nearly identical or literally identical in previous rounds, the DLA made no such finding until Round 3; (2) the DLA's Round 3 "**cannot be determined fair and reasonable**" warning to PAE was arbitrary and unequal

---

[2] This case spans from September 15, 2021, when Plaintiff filed its complaint, to August 26, 2022, when Plaintiff's motion for attorney fees was fully briefed.

(prejudicial) to Plaintiff because the Government has presented this assessment, at least in part, in relation to the magnitude by which certain distribution line items exceeded the Government's maximum estimate, and the DLA warned PAE about its Drop Ship Tier 3 price, which was 7.15-7.48 times higher than the Government's estimate, but did not equally implicate Plaintiff's price for (much more costly) Non-Drop Ship Tier 9, which was 7.39 times higher than the Government's estimate. The Government did not appeal the Court's decision.

Plaintiff filed a Motion for Attorney Fees and Costs. Under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, Plaintiff seeks an award of their fees and expenses incurred over the course of this litigation. Plaintiff claims to have incurred $38,495.62 in attorney fees and $402.00 in costs. Plaintiff acknowledges that it prevailed only on the Zone 2 portion of this case, and states that it only seeks 50% of the attorney fees incurred working on this case up until December 28, 2021. Plaintiff further requests all fees.[3]

The Government opposes the motion and requests that the Court deny Plaintiff's motion in its entirety or, in the alternative, reduce the requested fees and costs. For the reasons given below, Plaintiff's Motion for Attorney Fees and Costs is **GRANTED.**

## I.     The Equal Access to Justice Act

Plaintiff seeks attorney fees and expenses pursuant to the Equal Access to Justice Act ("EAJA") 28 U.S.C. § 2412(d). Under Section 2412(d), "a trial court must award attorneys' fees where: (i) the claimant is a 'prevailing party'; (ii) the Government's position was not substantially justified; (iii) no 'special circumstances make an award unjust'; and (iv) the fee application is timely submitted and supported by an itemized statement." *Libas, Ltd. v. United States*, 314 F.3d 1362, 1365 (Fed. Cir. 2003) (summarizing 28 U.S.C. §§ 2412(d)(1)(A), (B)). In addition, if the applicant is a corporation, its net worth must not have "exceed[ed] $7,000,000 at the time the civil action was filed, . . . [or employed] more than 500 employees at the time the civil action was filed." 28 U.S.C. § 2412(d)(1)(A),(B).

The Government does not dispute Plaintiff's assertions regarding its net worth or size, or that Plaintiff was a prevailing party with respect to one of the two challenged awards. The Government does not raise any "special circumstances" that would make an award unjust. The Government contests only the substantial justification for its position and the amount claimed by Plaintiff in its fee application. Accordingly, the only issues for this Court to determine are whether the United States was substantially justified in its position and whether Plaintiff has established entitlement to any measure of recoverable fees.

The EAJA prohibits an award if the Government can demonstrate that its position was "substantially justified." 28 U.S.C. § 2412(d)(1)(A). The substantially justified standard "does not raise a presumption that the Government position was not justified, simply because it lost the case." *Norris v. SEC*, 695 F.3d 1261, 1265 (Fed. Cir. 2012) (internal quotation marks and

---

[3] Plaintiff also claims fees for the time spent preparing this EAJA application.

citation omitted).  Nor does the Government's position have to be "correct" or even "justified to a high degree."  *Id.* (quoting *Pierce v. Underwood*, 487 U.S. 552, 565, 566 n.2 (1988)). "Substantial justification" means "'justified in substance or in the main'--that is, justified to a degree that could satisfy a reasonable person.  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The Government meets this standard if it shows that its position had a "reasonable basis both in law and in fact," but fails if it can only show that it is "merely undeserving of sanctions for frivolousness."  *Id.* at 565-66 (quotations and citations omitted).  In "determin[ing] whether the overall position of the United States is substantially justified, trial courts are instructed to look at the entirety of the government's conduct and make a judgment call whether the government's overall position had a reasonable basis in both law and fact."  *Chiu v. United States*, 948 F.2d 711, 715 (Fed. Cir. 1991).

## II.   Discussion

### A.  The Government's Position Was Not Substantially Justified.

This Court sustained Plaintiff's protest of the Zone 2 award based on the finding that the Government's conduct violated FAR § 15.306(d)(3), which mandates that when Government contracting officers engage with bidders, such discussions must be meaningful, "[a]t a minimum, . . . indicat[ing] to or discuss[ing] with, each offeror still being considered for award, deficiencies, [and] significant weaknesses," and FAR § 15.306(e)(1), which prohibits government personnel from engaging in conduct that "favors one offeror over another." Specifically, this Court found that "DLA's Round 3 unreasonable price warning to PAE and not to Plaintiff plus DLA's award to PAE despite the fact that PAE declined to respond to the unreasonable price warning amounts to an arbitrary and capricious decision."  ECF No. 56 at 10. Thus, to defeat Plaintiff's the EAJA application based on a showing of substantial justification, the Government has the burden to show that its unequal treatment of Plaintiff and PAE, and its violation of both FAR § 15.306(d)(3) and FAR § 15.306(e)(1) was reasonable.  *See Chiu*, 948 F.2d at 715.  The Government failed to meet its burden.  For the reasons given below, this Court holds that the Government's position at the agency level and its litigation position were not substantially justified, and as a result an award of fees and expenses is appropriate.

In *Federal Election Com'n v. Rose*, 806 F.2d 1081 (D.C. Cir. 1986), the court distinguished circumstances in which agency action was deemed arbitrary and capricious due to reasons such as the agency's failure to adequately explain its actions—which may nevertheless be deemed substantially justified—from "other reasons for invalidating agency action as 'arbitrary and capricious' [that] seem more likely . . . to signal conduct that is not 'substantially justified.'"  *Id.* at 1089.  The Rose court explained:

> For example, an agency's unjustifiably disparate treatment of two similarly situated parties works a violation of the arbitrary-and-capricious standard. So does an agency's failure to apply a rule in a situation to which the rule obviously pertains. As a practical matter, the Government in fees litigation may well suffer considerably greater difficulty in demonstrating that these sorts of 'arbitrary and capricious' actions are nonetheless 'substantially justified.'

*Id.* The DLA's unequal treatment of Plaintiff and PAE, which this Court found to be arbitrary and capricious, signals conduct that is not substantially justified, and the Government has offered no explanation for its conduct that establishes otherwise.

Although the Government asserts that the DLA reasonably believed discussions were meaningful because they led all offerors to improve their prices, this does not explain the DLA's violation of FAR § 15.306(d)(3) and FAR § 15.306(e)(1). The Court found that the DLA violated FAR § 15.306(d)(3) by failing to conduct meaningful discussions because it did not provide both offerors with the same warning during Round 3 discussions. ECF No. 40 at 7 ("The Agency's Round 3 Instruction to PAE Violates the Requirement for Meaningful Discussions.") The Court also found that the DLA violated FAR § 15.306(e)(1), by engaging in conduct that "favor[ed] one offeror over another." ECF No. 56 at 13 ("the Court further holds that PAE and Plaintiff were treated unequally even though they both had distribution line item prices which were similar magnitudes above the Government's maximum estimate."). There is no other explanation for the distinct warnings given to the two offerors other than unequal treatment. The Court has considered all of the Government's arguments in relation to this matter in its briefs and its motion for reconsideration, and this Court also held a hearing on March 9, 2022, to further consider the Government's position. Even after the Government had multiple opportunities to explain its conduct, the Court still found that the DLA acted in an arbitrary and capricious manner by violating both FAR § 15.306(d)(3) and FAR § 15.306(e)(1). ECF No. 56 at 19.

The Government also contends that there is nothing inherently unlawful in the DLA conveying different messages to PAE and to Plaintiff during discussions in light of their proposals' differences.[4] ECF No. 62 at 9. This Court previously rejected the Government's argument that the DLA was simply conveying different messages to offerors during discussions because of distinctions in their respective technical approaches. In its motion for reconsideration, the Government argued that the **"cannot be determined fair and reasonable"** warning to PAE (and not to Plaintiff) reflected an unbalanced pricing finding, and that DLA found only PAE's distribution tier pricing unbalanced, purportedly accounting for the uneven representations to the two bidders. This Court heard and rejected this argument, finding "In addition to not identifying unbalanced pricing with regard to PAE in Rounds 1 and 2 (despite the fact that this was evident), the Court further holds that PAE and Plaintiff were treated unequally even though they both had distribution line item prices which were similar magnitudes above the Government's maximum estimate." ECF No. 56 at 13.

As support for its argument, the Government invokes general principles of "discussions," stating that a contracting officer has substantial discretion in conducting discussions. The discretion afforded to contracting officers in conducting discussions, however, does not allow

[4] The Government also points to its success at the GAO as evidence that its position was substantially justified. In its reply, Plaintiff correctly points out that the fact that the Government was successful before the GAO does not create a presumption about whether the Government was substantially justified. This Court agrees. The Federal Circuit has held that "the position of the government is not shown to be substantially justified merely because the government prevailed before a lower tribunal." *Community Heating & Plumbing Co. v. Garrett*, 2 F.3d 1143, 1145-46 (Fed. Cir. 1993).

them to conduct unequal discussions or engage in conduct that favors one offeror over another, as this Court previously found.  Thus, this Court holds that the DLA's failure to follow FAR § 15.306(d)(3) and FAR § 15.306(e)(1) during discussions cannot be determined to be substantially justified as "There is no justification for the government's position when clear, unambiguous regulations directly contradict that position." *Filtration Dev. Co. v. United States*, 63 Fed. Cl. 612, 621 (2005).

When analyzed through the "EAJA 'prism,'" the DLA's actions and the Government's litigation position supporting those actions are not substantially justified. *Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. United States*, 837 F.2d 465, 467 (Fed. Cir. 1988) (quoting *Rose*, 806 F.2d at 1090 ("[the court should] examine through an EAJA prism both the Government's litigation position and the conduct that led to the litigation")).  Plainly stated, the FAR regulations "were so clear and the [agency's] failure to comply with them so obvious that [its] actions could not 'appear correct to a reasonable person.'" *Filtration Dev. Co., LLC*, 63 Fed. Cl. at 621 (quoting *Role Models America, Inc. v. Brownlee*, 359 U.S. App. D.C. 237 (D.C. Cir. 2004)).

### B.  The Fees Claimed by Plaintiff are Reasonable and Supported

Plaintiff acknowledges that it prevailed only on the Zone 2 portion of this case, and therefore is only seeking 50% of the attorneys' fees incurred working on this case up until December 28, 2021.  Plaintiff states that all fees incurred in connection with the Government's motion for reconsideration pertained to the Zone 2 award, and thus 100% of those fees are claimed.  Further, Plaintiff also includes fees for the time spent preparing this EAJA application. *See Fritz v. Principi*, 264 F.3d 1372, 1377 (Fed. Cir. 2001) ("[Plaintiff] was entitled to attorney fees . . . incurred in preparation and defense of the fee application to the extent those fees are defensible.").  Plaintiff initially asks for an award of $39,371.70 in attorney fees and $402.00 in costs, but after making calculation adjustments, as described below, Plaintiff asks for an award of $38,495.62 in attorney fees and $402.00 in costs.  The Government contends that Plaintiff's claimed fees for the successful protest of the Zone 2 award are unreasonable and inadequately supported for several reasons.

### 1.  Plaintiff's Claimed Fees are Adequately Supported

As an initial matter, the Government's response correctly points out that Plaintiff's EAJA submission does not state that those who completed the work were in fact attorneys nor does Plaintiff identify the attorneys' billing rates.  To address this point, Plaintiff filed an updated itemization that identifies the positions of each of the attorneys who performed work on this matter and their billing rates, all of which exceed the statutory rate.  *See* ECF No. 71.[5]

---

[5] Further, in the Supplemental Declaration, Plaintiff states that, "I learned after filing SupplyCore's reply submission that Sabrina Bey was not a licensed attorney at the time she worked on this case. She worked for Husch Blackwell as a law clerk, not as an associate attorney, and departed the firm on May 12, 2022. I was mistaken regarding her status at the time the initial fee petition and reply were filed. Ms. Bey's work as a law clerk was billed to SupplyCore and paid by SupplyCore as indicated in the initial and reply submissions; however,

The Government also argues that only the two attorneys whose names appear on filings and who were granted access to the sealed filings and protected record in this case are eligible for an award of fees.  The Government's suggestion that only attorneys who have appeared on record are eligible for fees is not supported by the EAJA, which contains no such restriction.  Rather, the EAJA authorizes an award of fees for services provided by "any attorney . . . representing or appearing on behalf of the party."  28 U.S.C. § 2412(d)(1)(B).  Further, courts have routinely rejected the argument that only attorneys who appear on behalf of a party are entitled to attorneys' fees under fee-shifting statues.[6]  *See, e.g., Case v. Unified School Dist. No. 233, Johnson County, Kan.*, 157 F.3d 1243, 1252 (10th Cir. 1998) ("We do not think that whether [the attorney] entered an appearance is the relevant question . . . . [W]e can easily contemplate a scenario in which a junior associate spends hours of appropriately billable time on litigation yet remains unknown to the court."); *Cuceta v. City of N.Y.*, No. 10 Civ. 5059 (FB)(JO), 2012 WL 2885113, at *3 (E.D.N.Y. Feb. 7, 2012)(a prevailing party's entitlement to fees "is limited neither by some artificial boundary on the number of attorneys [it] may engage, nor by some maximum amount of work that his attorneys may perform 'behind the scenes,' but only by the principle that the fees be reasonable.").  Thus, this Court rejects the Government's contention that Plaintiff is entitled to an award of attorney fees only for those attorneys who have appeared in this case.

The Government contends that only legal work that resulted in a "deliverable" was reasonable, and thus time spent on "research" should be disallowed as "duplicative."  ECF No. 62 at 13-14.  The Government cites no legal support for the proposition that in order to be "reasonable" under the EAJA legal work must result in a "deliverable," and the Government identifies no specific time entries that it contends demonstrate unreasonable duplication.  First, this Court holds it is not unreasonable for associate attorneys to perform legal research and share that research with another attorney who incorporates the research into a "deliverable."  Further, the itemization that Plaintiff submitted with its EAJA application demonstrates that each of the attorneys who worked on this case made distinct contributions.

The Government claims that the total time Plaintiff's attorneys spent on the case was unreasonable and excessive based on the length of the briefs (25 and 18 pages) Plaintiff submitted in support of its motion for judgment on the administrative record.  Plaintiff correctly points out that this argument ignores that the time spent preparing briefs involved legal research, review of thousands of pages of the administrative record, and drafting and revising arguments.  Moreover, the Court agrees with Plaintiff that the relative conciseness of Plaintiff's briefs is not indicative of a lack of time spent preparing them; in fact, the opposite inference is warranted.  The Government asserts that Plaintiff's arguments were unsupported, and Plaintiff ultimately prevailed only on its unequal discussions claim raised in its reply and developed, in substance,

---

due to this inadvertent oversight her time has been removed from Exhibit A and is not being claimed."  ECF No. 71 at 2.

[6] *See e.g., Manning v. Astrue*, 510 F.3d 1246, 1250n.5 (10th Cir. 2007)("The Supreme Court has that legal principles from cases addressing other fee-shifting statutes, such as § 1988, apply to EAJA cases.").

not by SuppyCore but by the Court's own questioning of the contracting officer in a post-judgment hearing.

The Government's argument fails because Plaintiff successfully litigated its Zone 2 claim and only seeks fees for work associated with that claim. Further, Plaintiff has submitted adequate proof of the attorney fees sought by providing an itemized documentation of its claimed hours, with a summary explaining the work completed for each hour claimed. Thus, the Court holds that Plaintiff's claimed hours are reasonable. Finally, this Court holds that Plaintiff's claimed hours were not excessive. The Supreme Court has held that Petitioner's counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Here, Plaintiff's claimed hours are not duplicative, excessive, or unnecessary. Plaintiff only claims hours for its legal work on its claim for Zone 2. Thus, the Court holds that Plaintiff's claimed hours are not excessive.

Lastly, the Government opposes Plaintiff's request for fees for hours spent preparing and defending its EAJA application. While a prevailing party awarded EAJA fees is presumptively entitled to fees for hours spent preparing and defending its EAJA application, the Court must determine whether the hours expended on litigating the EAJA application were reasonable. *Fritz v. Principi*, 264 F.3d 1372, 1377 (Fed. Cir. 2001). In *Fritz*, the Federal Circuit instructed that "to the extent that the applicant ultimately fails to prove justification for each item of fee claimed, charges generated in defense of such unfounded fee claims are not recoverable." *Fritz*, 264 F.3d at 1377, n.1 (citing *Comm'r v. Jean*, 496 U.S. 154, 163 n.10 (1990)). The Government has not identified any claimed hours that it argues are unfounded or unreasonable. Plaintiff claims entitlement to 16.9 hours of attorney work related to its EAJA application, which are included in the hours requested. Plaintiff provides an itemized list of each hour worked and explains how the time was spent. This Court holds that this is an adequate justification for each item of fee claim concerning Plaintiff's work defending its EAJA application. *See Naporano Iron & Metal Co. v. United States*, 825 F.2d 403, 404 (Fed. Cir. 1987) (explaining that the EAJA requires that anyone seeking an award of attorney fees and expenses shall submit, among other things, "an itemized statement . . . stating the actual time expended and the rate at which fees and other expenses are computed.").

## 2. Plaintiff is Entitled to a Cost of Living Adjustment

The EAJA provides that the amount of attorney fees shall be based on the "prevailing market rate," but "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). It is within the court's discretion to apply a cost of living adjustment. *See Oliveira v. United States*, 827 F.2d 735, 744 (Fed. Cir. 1987)). "[T]he Supreme Court has implied that applying a cost-of-living adjustment under the EAJA is next to automatic." *Meyer v. Sullivan*, 958 F.2d 1029, 1035 n.9 (11th Cir. 1992). The plaintiff must only overcome a minimal threshold; the Court of Federal Claims has "decline[d] to impose a requirement that an applicant must do more than request such an adjustment and present a basis upon which the

8

adjustment should be calculated." *California Marine Cleaning*, 43 Fed. Cl. 724, 733 (1999) (citations omitted).

In order to calculate the appropriate cost of living adjustment, courts multiply EAJA's $125 hourly cap by the applicable consumer price index ("CPI"), and then divide that product by the relevant CPI for March 1996 ($155.70), when the cap was last raised. *See 2M Rsch. Servs., LLC v. United States*, 148 Fed. Cl. 99, 108 (2020). The Court of Federal of Claims has explained:

> In determining which CPI is applicable to a given award, the Federal Circuit has endorsed the use of "a single mid-point inflation adjustment factor applicable to services performed before and after that mid-point. Under the 'mid-point' method, the Court determines the 'month that lies at the midpoint between the first and last month for which attorneys' fees are being awarded,' and uses the CPI for that 'midpoint' month as the basis for the cost of living adjustment to the statutory cap. The formula for calculating a [cost of living] adjustment is as follows:
> $125 x Relevant CPI Month [÷]
> $155.7 (March 1996 CPI)

*Id.* (internal quotations and citations omitted). The Government argues that Plaintiff failed to establish its entitlement to a cost of living adjustment. First, the Government argues that the court may only award *the lower of* the attorney's billing rate or the statutory cap plus a cost-of-living increase. The Government argues that because Plaintiff has not provided the Court with the requisite information to assess which rates are lower, for each individual, its application for fees does not establish the appropriateness of the rates demanded. Plaintiff addresses this issue by filing Exhibit A, attached to its Supplemental Declaration of William E. Hughes, which provides the rates of each attorney that worked on the case in comparison to the EAJA rates:

| Timekeeper | Title | Rate Billed | EAJA rate | Hours | EAJA Amount (Hours x EAJA rate) |
|---|---|---|---|---|---|
| Julia Banegas | Associate Attorney | $445 - 2021<br><br>$498.75 - 2022 | $223.83 | 71.65 | $16,037.42 |
| William Hughes | Partner | $480 - 2021<br>$500 - 2022 | $213.92 | 76.65 | $16,396.97 |
| Leah Kaiser | Associate Attorney | $432.25 | $223.83 | 3.00 | $671.49 |
| Maya Desai | Associate Attorney | $432.25 | $223.83 | 7.45 | $1,667.53 |
| Emily Constantine | Senior Counsel | $498.75 | $213.92 | 17.40 | $3,722.21 |
| | | | | **176.15** | **$38,495.62** |

ECF No. 71-1 at 11.  The EAJA rate here is the lower of the two rates for each attorney billed. Thus, Plaintiff correctly applied the EAJA rate, as described below, in its calculation of fees.

Next, the Government correctly notes in its response that Plaintiff used the U.S. City CPI rather than the applicable local CPI in calculating the appropriate cost-of-living adjustment.  The Federal Circuit has held "the local CPI approach, where a local CPI is available . . . is more consistent with the EAJA than the national approach."  *Parrot v. Shulkin*, 851 F.3d 1242, 1249 (Fed. Cir. 2017) (citations omitted).  To supplement this information, Plaintiff filed a Supplemental Declaration of William E. Hughes, stating that Attorneys Banegas, Desai, and Kaiser, are located in Washington D.C., and Attorneys Hughes and Constantine are located in Milwaukee, Wisconsin.  Plaintiff also calculated revised hourly rates based on using the appropriate CPIs as reflected below.

This Court sees no reason to deny Plaintiff a cost of living adjustment.  Plaintiff correctly recognizes March 1996, the effective date of the amended statutory cap, as the baseline for calculating the cost of living adjustment.  The EAJA was amended in 1996, and as a result the statutory cap was raised to $ 125.  *See* Pub. L. No. 104-121 § 232(b)(1), 110 Stat. at 863. Consequently, any civil action commenced on or after the effective date of the 1996 statute, March 29, 1996, must use the new statutory cap. *See id.* § 233, 110 Stat. at 864. Thus, March 1996 is the appropriate baseline for calculating the cost of living adjustment to the $ 125 cap. *See California Marine Cleaning*, 43 Fed. Cl. at 734.  If legal services span a number of months, as here, the Federal Circuit has used the "mid-point" method to perform a CPI calculation. *Chiu*, 948 F.2d at 722 n.10.  Under the "mid-point" method, the Court determines the "month that lies at the mid-point between the first and last month for which attorneys' fees are being awarded," and uses the CPI for that "mid-point" month as the basis for the cost of living adjustment to the statutory cap. *DGR Assocs., Inc. v. United States*, 97 Fed. Cl. 214, 221 (2011), *rev'd on other grounds*, 690 F.3d 1335 (Fed. Cir. 2012).

Plaintiff claims attorney fees for the period from September 3, 2021, to March 9, 2022.[7] The mid-point in that period is December 2021.  To calculate the cost of living adjustment for March 1996 through December 2021, the statutory cap of $125 is multiplied by the CPI in December 2021 and divided by the CPI in March 1996.  The relevant CPIs vary here because the attorneys are in different locals.  Attorneys Banegas, Desai, and Kaiser are located in Washington D.C., and Attorneys Hughes and Constantine are located in Milwaukee, Wisconsin.

Plaintiff provides the United States Bureau of Labor Statistics ("BLS") CPI data for the Midwest Region, which according to BLS includes Wisconsin.  ECF No. 70-1 at 3.  The Midwest CPI, for Attorneys Hughes and Constantine, in December 2021 is $259.69.  The March 1996 Baseline CPI in the Midwest is $151.7.  ECF No. 70-1 at 2.  For attorneys Hughes and

---

[7] In its motion for attorney fees, Plaintiff explains that fees were incurred over a period of approximately six months, from September 3, 2021, when Plaintiff prepared the complaint and initiated this action, until March 9, 2022, when the Government's motion for reconsideration was fully briefed and the hearing had been completed.

Constantine, the hourly rate of $213.92 was calculated as follows: ($125 x $259.609 (December 2021 Midwest CPI) ÷ $151.7 (March 1996 Midwest CPI) = $213.92.[8]

Plaintiff provides an exhibit showing that no December 2021 Mid-Atlantic CPI data exists for Washington D.C., as the data is collected on a bi-monthly basis, ECF No. 70-1 at 10, and thus Plaintiff instead used the December 2021 U.S. City CPI for Attorneys Banegas, Desai, and Kaiser, which is $278.802.  ECF No. 59-4 at 2.  The U.S. City CPI in March 1996 is $155.7.  ECF No. 59-4 at 2.  Thus, for attorneys Banegas, Desai, and Kaiser the hourly rate of $223.83 was calculated as follows: ($125 x $278.802 (U.S. City CPI for December 2021) ÷ $155.7 (March 1996 CPI) = $223.83 per hour.  Plaintiff also supplemented its EAJA application to reflect 10.5 hours spent in connection with this reply. With this additional time and the rate adjustment explained above, the total number of hours included in this application is 176.15 hours, resulting in total attorney fees of $38,495.62.  Plaintiff's application also properly identifies a disbursement of $402.00 in its billing records to cover the filing fee paid to the United States Court of Federal Claims.  ECF No. 70-1 at 11.  Thus, the total amount awarded in reasonable attorney fees and costs is $38,897.62, representing $38,495.62 in attorney fees and $402.00 in costs.

## III.  Conclusion

The Court concludes, after considering the totality of the circumstances, including both the underlying agency action and the Government's litigation position, that the position of the Government in this dispute was not substantially justified.  Therefore, the Court **GRANTS** Plaintiff's Motion for Attorney Fees and Costs.  Plaintiff is awarded attorney fees of $38,495.62 and $402.00 in costs.  The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Edward J. Damich
EDWARD J. DAMICH
Senior Judge

---

[8] Plaintiff explains in its Supplemental Declaration that it reduced the total amount of fees for work performed on this case prior to December 28, 2021, by 50% to ensure that only fees relating to Plaintiff's successful protest of the Zone 2 contract award are being claimed.  ECF No. 71 at 2.  Plaintiff states that legal work performed after December 28, 2021, related solely to the successful protest of the Zone 2 contract award.  *Id.*  Thus, Plaintiff explains that it claims 100% of the fees for work performed after December 28, 2021.  *Id.*